IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DZ JEWELRY, LLC, d/b/a ZADOK JEWELERS, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-20-3606 |
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, | § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The COVID-19 pandemic disrupted and interrupted many aspects of life. Like many brick-and-mortar retailers, DZ Jewelry, LLC, d/b/a Zadok Jewelers lost customers and revenue when the State of Texas and Harris County, Texas ordered nonessential businesses to temporarily close their doors to prevent the spread of COVID-19. Like many retail businesses, Zadok is hoping that its insurance policy covers some of the losses. That hope turns on the specific language of Zadok's policy. Unfortunately for Zadok, the language provides no coverage for the losses it sustained. The court grants the motion to dismiss Zadok's complaint, without prejudice and with leave either to amend or to inform the court that it stands on its current pleading no later than March 25, 2021.

The reasons are explained below.

**I.      Background**

Before COVID-19 became a problem, before the president declared it a pandemic, and before the State of Texas and Harris County issued orders temporarily closing businesses, Zadok purchased an all-risk commercial property insurance policy from Certain Underwriters at Lloyd's

of London.¹ (Docket Entry No. 1 at ¶ 72). The policy provides 30 days of business-income loss coverage and two weeks of civil-authority order and extra-expense coverage. The policy does not have a virus, pandemic, or communicable-disease exclusion clause. (*Id.* at ¶¶ 77–79).

Under the policy's business-income loss provision, Lloyd's agreed to cover business income lost during a "period of restoration" caused by a "direct physical loss of or damage to property":

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.²

(Docket Entry No. 5-2 at 30). "Period of restoration" is defined as "the period of time that . . . [b]egins with the date of direct physical loss or damage . . . [and] [e]nds on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." (*Id.* at 36).

Under the civil-authority order provision, Lloyd's agreed to cover business income lost and extra expenses incurred due to certain government-ordered closures:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(Docket Entry No. 5-2 at 31; Docket Entry No. 1 at ¶ 84).

---

¹ The policy certificate number is SS0140418/7266, with effective dates from March 10, 2020 until March 10, 2021. (Docket Entry No. 5-2 at 2–3).

² "Covered Cause of Loss" is a broad term that includes all risks of direct physical loss "unless the loss is" caused by certain excluded causes, such as "Earth Movement," "Nuclear Hazard," and "War And Military Action." (Docket Entry No. 5-2 at 37).

The policy defines "extra expenses" as "necessary expenses [the insured] incur[s] during the 'period of restoration' that [the insured] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (Docket Entry No. 5-2 at 30). These expenses include costs to "[r]epair or replace any property; or . . . [r]esearch, replace or restore the lost information on damaged valuable papers and records." (*Id.*).

In March 2020, the Governor declared a state of disaster in Texas due to COVID-19. (Docket Entry No. 1 at ¶ 48). On March 19, the Governor issued executive orders that banned gatherings of 10 or more people and discouraged gatherings at bars, food courts, restaurants, and gyms. (*Id.* at ¶ 49). The Governor also required nonessential services to operate remotely.[3] In Harris County, on March 24, the Commissioner's Court Judge issued a "Stay Home, Stay Safe Order," prohibiting nonessential businesses from opening. (*Id.* at ¶ 50). On April 27, the Governor allowed nonessential retail stores to reopen at 25% capacity, and on May 5 expanded the maximum capacity to 50%. (*Id.* at ¶¶ 56, 57). The Harris County Order was extended, but Zadok was able to reopen on April 30, 2020. (*Id.* at ¶ 52).

Zadok closed its store from March 23 until April 30, 2020, when it reopened with limits on capacity. (*Id.* at ¶¶ 65, 75). Zadok alleges that it was forced to close for approximately five weeks due to "various orders issued by the State of Texas and Harris County" and "the prevalence of COVID-19." (*Id.* at ¶ 3). As Zadok states, the closure orders required it to shut down because retail jewelry sales are not essential. (*Id.* at ¶ 11).

Zadok also alleges that it closed because "people infected by the virus, or who had contact with other infected people, have likely visited Zadok's store, and thereby contaminated Zadok's store and surrounding property with the virus by the time of the Closure Orders, and thereafter."

---

[3] These orders can be found at TEXAS HEALTH & HUMAN SERVICES, EXECUTIVE ORDERS, https://www.dshs.state.tx.us/coronavirus/execorders.aspx.

(*Id.* at ¶ 12). Three Zadok employees tested positive for COVID-19, though it is unclear if they were in the store while they were contagious. (*Id.* at ¶ 13). Zadok alleges that the "transmission of COVID-19 and the Closure Orders" adversely impacted its business because customers either could not access its store or would not do so for fear of contracting COVID-19, or both. (*Id.*). Zadok alleges that the pandemic and closure orders resulted in $3 million in lost sales. (*Id.* at ¶¶ 70, 75).

On April 3, 2020, Zadok filed a claim with Lloyd's for lost business income and extra expenses due to COVID-19 and the Texas closure orders. (*Id.* at ¶ 89). On May 28, Lloyd's denied the claim, in part because Zadok's store did not suffer direct physical loss or damage to property at the premises. (*Id.* at ¶ 90). This lawsuit followed. Zadok asserts breach of contract, bad faith, and violations of the Texas Prompt Payment of Claims Act, TEX. INS. CODE § 542.002, *et seq*. (Docket Entry No. 1). Lloyd's moves to dismiss.

## II.     The Legal Standard

### A.     The Rule 12(b)(6) Standards

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B. Texas Insurance Law

The parties agree that Texas law governs this action. Insurance policies are read based on "common principles governing the construction of contracts, and the interpretation of an insurance

5

policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). "Unless the policy dictates otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). Courts "enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and courts construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Pan Am*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Id.*

**III.   Analysis**

Zadok cannot recover under the policy's business-income, civil-authority, or extra-expenses provisions unless it adequately alleges "direct physical loss of or damage to property." The business-income provision allows recovery only if the insured alleges facts that plausibly show that the suspension in business operations was "caused by direct physical loss of or damage to property at the premises." (Docket Entry No. 5-2 at 30). The civil-authority order provision allows recovery only if the insured alleges facts that plausibly show that a government order prohibited "access to the described premises due to direct physical loss of or damage to property, other than at the described premises." (*Id.* at 31). The extra-expenses provision allows recovery

6

only if the insured incurred expenses due to "direct physical loss or damage to property." (*Id.* at 30).

### A.     Business-Income Coverage

#### 1.     The Suspension-of-Operations Clause

While the policy does not define "direct physical loss of or damage to property," the Fifth Circuit has held that pleading "direct physical loss or damage" to property requires allegations of "distinct, demonstrable physical alteration of the property."  *Hartford Ins. Co. Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006); *see also Trinity Indus., Inc. v. Ins. Co. N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state."); 10A COUCH ON INS. § 148:46 (3d ed. 2005) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

Applying these precedents to similar, if not identical, policy language, district courts in Texas have consistently held that COVID-19 does not produce direct physical loss of or damage to property.[4]  The majority of courts across the country interpreting identical or similar contract

---

[4] *See Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *3 (E.D. Tex. Dec. 7, 2020) ("The regulation causes no changes to the structure of the property, and there is no pleading that the virus itself was present on and altered the property."); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20-CV-00680, 2020 WL 6578417, at *6 n.7 (W.D. Tex. Oct. 26, 2020) ("[I]n recent months, numerous courts—including at least one court in this District and Division—have held that the lost use of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute 'direct physical loss of' a property such that it may be the basis for a claim for loss of business income."); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 360 (W.D. Tex. 2020) ("[T]he Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable."); *cf. Berkseth-Rojas v. Aspen Am. Ins. Co.*, No. 3:20-CV-0948, 2021 WL 101479, at *5

language have concluded that COVID-19 does not cause a direct physical loss of or damage to property.[5]

Like other insureds facing similar losses, Zadok alleges that its store was physically damaged because COVID-19 may remain on surfaces and in the air for days. (Docket Entry No. 1 at ¶¶ 42, 62–66). Zadok does not allege that COVID-19 was found on any store surface or lingered in the air. Zadok acknowledges that "the property's structure remains undisturbed," (Docket Entry No. 13 at 9), even while alleging that the potential presence of COVID-19 caused "direct physical loss of or damage to" the property. (Docket Entry No. 1 at ¶¶ 62–66). Zadok also argues that COVID- 19 deprived it "of the functionality or the intended use of the [s]tore." (Docket Entry No. 13 at 13).

Zadok does not allege that COVID-19 was found on any surface or in the air of its store. Zadok merely alleges that COVID-19 was potentially present because there were confirmed cases in Houston and customers visited the store before it was closed. (Docket Entry No. 1 at ¶¶ 62–67).

---

(N.D. Tex. Jan. 12, 2021) (under Minnesota law, "direct physical loss or damage requires something more than mere loss of use or function").

[5] *See, e.g.*, *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-04783, 2021 WL 141180, at *6 (N.D. Cal. Jan. 13, 2021) ("Even if [the plaintiff] had included allegations regarding the virus being present on and damaging the property, they would not be plausible."); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20-CV-4612, 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) ("Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'"); *Palmer Holdings & Invs., Inc. v. Integrity Ins. Co.*, No. 4:20-CV-154, 2020 WL 7258857, at *10 (S.D. Iowa Dec. 7, 2020) (collecting cases and concluding that COVID-19 does not cause physical loss of or damage to property); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses."); *Seifert v. IMT Ins. Co.*, No. 20-CV-1102, 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) ("[The plaintiff's] claims fail to fall within the permissible realm of 'direct physical loss,' as he cannot allege facts showing his properties were actually contaminated or damaged by the coronavirus.").

This does not plausibly allege that COVID-19 directly caused physical loss of or damage to the store property.

Zadok alleges that three employees tested positive for COVID-19, but does not allege that the employees were in the store while they were contagious, much less that COVID-19 lingered in the store so as to physically alter or damage the property. Even if Zadok had alleged that the employees tested positive within a certain period before or after being in the store, that would not plausibly allege that the store property was actually contaminated by COVID-19, much less that COVID-19 caused physical damage to the store. *See, e.g.*, *Berkseth-Rojas*, 2021 WL 101479, at *5 ("[The plaintiff] has failed to sufficiently allege that her property, or any other property, has been actually contaminated or infiltrated by COVID-19."); *Terry Black's Barbecue*, 2020 WL 7351246, at *7 ("Plaintiffs merely speculate that the virus could have been present because of its prevalence in Austin and Dallas.").

Nor does Zadok allege that "an actual physical exposure caused [it] to close [its] particular store." *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No. 20-CV-03750, 2020 WL 6562332, at *4 (N.D. Cal. Nov. 9, 2020). Zadok has not plausibly alleged that COVID-19 physically altered its property in a distinct, demonstrable way, as the policy language requires. *See Hajer*, 2020 WL 7211636, at *2–3 ("[T]here is no pleading that the virus itself was present on and altered the property.").

Even if Zadok had alleged facts showing that COVID-19 was detected in its store—which it has not—courts considering similar claims have repeatedly stated that COVID-19 does not cause physical damage to property; it causes people to get sick. *See Kevin Barry*, 2021 WL 141180, at *6 ("The virus COVID-19 harms people, not property."); *Uncork & Create LLC*, 2020 WL

9

6436948, at *5 ("COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant.").

Zadok does not allege that COVID-19 changed the property so as to make it unusable or uninhabitable. At most, Zadok alleges that COVID-19 caused a change in the way it operated its store, first by temporarily closing it, then by restricting the number of customers physically present in the store at any one time. None of these is sufficient to plausibly allege direct physical loss of or damage to property.[6] *See Berkseth-Rojas*, 2021 WL 101479, at *5 ("[The plaintiff] pleads that she was unable to use her property in the way she did before the pandemic due to the Orders and due to steps taken to prevent the 'emergence or reemergence' of COVID- 19. . . . direct physical loss or damage requires something more than mere loss of use or function."); *Uncork & Create LLC*, 2020 WL 6436948, at *5 ("If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to [its] operation."); *Michael Cetta, Inc.*, 2020 WL 7321405, at *6 ("Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'"); *Palmer Holdings*, 2020 WL 7258857, at *11 ("[L]oss of use alone is insufficient.").

Other policy sections support the conclusion, reached by other courts considering similar language, that Zadok does not plausibly allege that COVID-19 caused direct physical loss of, or

---

[6] Zadok alleges that, since the complete closure orders were replaced with capped-capacity orders, it has been able to operate its store. It is not clear that Zadok was forced to change the way it operates its business, other than by limiting capacity, requiring masks, and increasing the frequency and amount of cleaning. *See Terry Black's Barbecue*, 2020 WL 7351246, at *7 ("They continued to offer take-out services and, subsequently, limited capacity dine-in services. Thus, Plaintiffs were not denied access to or use of their property."). To the extent Zadok alleges additional cleaning, courts have rejected that allegation as insufficient to show physical damage to the property. *See Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-CV-2211, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("[R]outine cleaning and disinfecting can eliminate the virus on surfaces"); *Uncork & Create LLC*, 2020 WL 6436948, at *5 ("[COVID-19's] presence on surfaces can be eliminated with disinfectant.").

damage to, the insured premises. The policy allows insureds such as Zadok to recover for lost business income only during a "period of restoration," defined as the period needed for physically damaged property to be "repaired, rebuilt or replaced." (Docket Entry No. 5-2 at 36). The policy also allows insureds such as Zadok to recover "extra expenses" to "[r]epair or replace any property." (*Id.* at 30).

Zadok does not allege facts showing that any part of its store property required repair, rebuilding, or replacing. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("But here, there is nothing to fix, replace, or even disinfect for [the plaintiff] to regain occupancy of its property."); *Uncork & Create LLC*, 2020 WL 6436948, at *5 ("No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-CV-2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) ("Plaintiff need not make any repairs or change any part of the building to continue its business."). The lack of any alleged need for remediation shows that COVID-19 did not cause direct physical loss of, or damage to, Zadok's store.

For all these reasons, Zadok does not allege that COVID-19 caused direct physical loss of, or damage to, its store.

### 2. Civil-Authority Order and Extra-Expense Coverage

Zadok alleges that government closure orders caused it to close its store, lose business income, and sustain extra expenses. (Docket Entry No. 1 at ¶ 3). Zadok shut its doors only after, and for the period that, Texas and Harris County officials ordered nonessential businesses to close. Zadok reopened when those orders were lifted at the end of April 2020, even though COVID-19 was still pervasive in Harris County and Texas.

A government order must cause a loss of business income in two ways to trigger coverage. First, the order must prohibit access to the insured premises. Second, the order prohibiting access must be "due to direct physical loss of or damage to property, other than at the described premises." (Docket Entry No. 5-2 at 31).

Courts have consistently found that the type of civil-authority orders closing or limiting capacity at issue here do not meet the coverage criteria the policy requires. *See Terry Black's Barbecue*, 2020 WL 7351246, at *6 ("Plaintiffs do not allege that the restaurants underwent any physical change as a result of the civil authority orders."); *Sandy Point Dental, PC*, 2020 WL 5630465, at *2–3 ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) ("Most courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property.").

To claim civil-authority order coverage, Zadok must plausibly allege that the Texas closure orders were "due to" a "direct physical loss of or damage to property, other than at the described premises." (Docket Entry No. 5-2 at 31). Zadok does not allege that the closure orders restricted access to its store because of physical damage to other property or premises. *See Mudpie, Inc.*, 2020 WL 5525171, at *7 ("Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order."); *Pappy's Barber Shops*, 2020 WL 5500221, at *6 ("[E]ven if the government orders alleged in the complaint could be construed as

prohibiting Plaintiffs from accessing their premises, the orders were not issued due to direct physical loss of or damage to property other than at Plaintiffs' premises.").

To claim extra-expenses coverage, Zadok was required to allege that it incurred expenses that it "would not have incurred if there had been no direct physical loss or damage to property." (Docket Entry No. 5-2 at 30). Because Zadok did not allege, and could not plausibly allege, facts showing direct physical loss of or damage to its store, Zadok cannot allege that it incurred extra expenses within the policy.

### C. The Texas Insurance Code Claims

"As a general rule, there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015). An insured cannot recover damages for a bad-faith claim or statutory violation "if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). Because Zadok did not plead a right to coverage under the policy, Zadok cannot plead claims for bad faith or violations of the Texas Prompt Payment of Claims Act for the coverage denial. *See Terry Black's Barbecue*, 2020 WL 7351246, at *6 (dismissing extracontractual claims after finding that COVID-19 could not cause physical damage); *Diesel Barbershop*, 2020 WL 4724305, at *7 (same).

## IV. Conclusion

Lloyd's requested dismissal with prejudice. (Docket Entry No. 5). When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissal with prejudice. *See Reece v. Chubb Lloyds Ins. Co. Tex.*, No. 11-CV-507, 2011 WL 841430, at *2 (S.D. Tex. Mar. 8, 2011); *see also Great Plains Trust Co. v. Morgan Stanley Dean*

13

*Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

The motion to dismiss, (Docket Entry No. 5), is granted, without prejudice and with leave to amend. Zadok may file an amended complaint, if amendment would not be futile, or notify the court that it intends to stand on its current pleading, no later than March 25, 2021.

SIGNED on March 12, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge